UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| TIM JORDAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. G-06-265 |
| | § | |
| SHELL OIL COMPANY, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Tim Jordan ("Plaintiff") brings this action for personal injuries that allegedly occurred while he was working as a roustabout on the URSA Tension Leg Platform ("URSA"), which is owned by Defendant Shell Offshore Inc. ("Shell"). Plaintiff was employed by Defendant Helmerich & Payne International Drilling Co. ("H&P"). Defendants filed a Motion for Summary Judgment and a Supplemental Motion for Summary Judgment, and Plaintiff filed a Response. The Court issued an Order carrying Defendants' Motion for Summary Judgment with trial. The trial commenced on July 30, 2007, and the jury reached a verdict in favor of Defendants on August 1, 2007. After hearing testimony on the factual issues regarding URSA's vessel status, the Court is now convinced that Defendants' Motion for Summary Judgment must be **GRANTED**.[1]

## I. Procedural History and Analysis

Plaintiff brought his claim under the Jones Act and general maritime law. Defendants filed a Motion for Transfer of Venue, in which they alleged that URSA was not a vessel and that Plaintiff could not therefore assert claims as a seaman under the Jones Act. *See Chandris, Inc. v.*

[1] The Court does not deem this Order worthy of publication. Accordingly, it has not requested and does not authorize publication.

*Latsis*, 515 U.S. 347, 368, 115 S. Ct. 2172, 2190, 132 L. Ed. 2d 314 (1995) ("A seaman must have a connection to a vessel in navigation . . . that is substantial in terms of both its duration and its nature."). The eye-witnesses to Plaintiff's alleged accident were employed by H&P. If the Court had determined that URSA was not a vessel, Plaintiff's claims against H&P, which were filed pursuant to the Jones Act and maritime law,[2] would have been dismissed. If H&P were no longer a defendant, it would have no interest in compelling the attendance of its employees at trial. The Court would not have been able to subpoena these essential witnesses because they were not Texas residents. Thus, the venue analysis essentially hinged on URSA's vessel status. The Court requested more briefing on this issue and, after thoroughly reviewing all the materials submitted, the Court determined preliminarily that URSA was a vessel.[3]

Defendants then filed a Motion for Summary Judgment, in which they argued that Plaintiff was not a seaman because URSA was not a vessel. Defendants presented compelling evidence regarding URSA's status. However, the Court determined that in light of the newly expanded definition of "vessel" that was enunciated by the Supreme Court in *Stewart* and the Fifth Circuit in *Holmes*, it should carry the motion through trial. *See Stewart v. Dutra Constr. Co.*, 543 U.S. 481, 125 S. Ct. 1118, 160 L. Ed. 2d 932 (2005); *Holmes v. Atl. Sounding Co.*, 437 F.3d 441 (5th Cir. 2006). The pre-trial Record was still permeated with factual nuances regarding URSA's design that would cause reasonable minds applying the *Stewart* definition to differ. Furthermore, postponing the ultimate resolution of this hotly contested issue allowed for

---

[2] Maritime law does not apply because Plaintiff's work did not involve a "traditional maritime activity." *Texaco Exploration & Prod.*, 448 F.3d 760, 774 (5th Cir. 2006) (citing *Union Tex. Petroleum Corp. v. PLT Eng'g*, 895 F.2d 1043, 1047–48 (5th Cir. 1990)); *see also Herb's Welding, Inc. v. Gray*, 470 U.S. 414, 425, 105 S. Ct. 1421, 84 L. Ed. 2d 406 (1985) (noting that "exploration and development of the Continental Shelf," which are not "inherently maritime" tasks, "are not themselves maritime commerce").

[3] As the Court clarified in a subsequent Order, this finding was for purposes of the venue analysis only. It was not a final ruling.

the development of a comprehensive Record for appellate purposes.[4]

At trial, Defendants presented an engineer who testified about URSA's design and purpose.  The engineer explained that a *portion* of URSA was towed to its current location.  Then, the structure was completely assembled, over a period of years, and attached to the ocean floor with sixteen "tendons" that connect to sixteen massive pilings that are 96 inches in diameter and penetrate the soil 396 feet into the subsoil.  The apparatus is also attached by six pipelines, eleven fourteen-inch outer casing production risers, and other remote production fields.  Shell's intention is for URSA to remain so attached for decades.[5]  Any contemplated movement of this monstrous facility would be a massive engineering feat requiring up to two years of engineering and deconstruction.  After its anticipated life end in 2040, or so, URSA will be disassembled and scrapped.  It is likely that portions of URSA may then be towed to other locations before they are scrapped or discarded, but these portions cannot be considered vessels upon which a seaman could work.

Plaintiff worked on the complete assembled structure: the part towed to the current location, the tendons, pilings, pipelines, and innumerable other mechanisms that were affixed to it once it arrived at its current location and then affixed to the ocean floor, and the oil rig, which is an intricate part of the completed structure.  Once it was assembled, it was not—and is not— "*practically* capable of maritime transportation" *Stewart*, 543 U.S. at 497, 125 S. Ct. at 1129 (emphasis added); *see also Holmes*, 437 F.3d 441, 448 (same).  This structure was extensively modified when it arrived at its current location and would require extensive modification to

---

[4] Before the Court was completely informed about the nature of URSA at trial, the Court perceived this as a very important legal issue that needed to be addressed by the Fifth Circuit.  Thus, the Court aimed to give the Fifth Circuit all the information it needed to determine if, under *Stewart* and *Holmes*, a tension leg platform such as URSA is a vessel.

[5] The Court found Shell's expert to be extremely credible.  Apparently, the jury found him credible, too.

3

engage in maritime transportation again.  Thus, it is not a vessel. *See Kathrineer v. UNISEA, Inc.*, 975 F.2d 657, 660 (9th Cir. 1992) (finding that a platform that was converted into a shrimp processing plant and had an opening cut into her hull was not a vessel because it was no longer capable of transportation over water); *see also Stewart*, 543 U.S. at 494, 125 S. Ct. at 1127 (citing *Kathrineer* with approval as representing "an array of fixed structures not commonly thought of as capable of being used for water transport" and thus not within the reach of the *Stewart* definition of "vessel").

Both the *Stewart* Court and the *Holmes* Court noted that the vessel inquiry is a question of law that may involve factual issues for the jury. *See Stewart*, 543 U.S. at 496, 125 S. Ct. at 1128 ("In some cases that inquiry may involve factual issues for the jury, . . . but here no relevant facts were in dispute." (citing *Chandris*, 515 U.S. at 373, 115 S. Ct. at 2193)); *Holmes*, 437 F.3d at 445 ("Whether an unconventional craft is a vessel is an issue that is generally resolved as a matter of law, although we have recognized that 'at the margin, fact issues may be presented.'" (quoting *Manuel v. P.A.W. Drilling & Well Serv.*, 135 F.3d 344, 347 (5th Cir. 1998)).  All of the Court's factual questions were resolved at trial, and, in keeping with the jury's verdict, the Court concludes that URSA, in its design and manifestation, is a *permanent structure* on the seabed.  Because Plaintiff cannot be a seaman if the structure upon which he worked is not a vessel, he may not assert Jones Act claims.  Any claims he has are governed by the Outer Continental Shelf Lands Act ("OCSLA"), which applies to "all installations and other devices permanently or temporarily attached to the seabed, which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom . . . ." 43 U.S.C. § 1333(a)(1). Thus, Defendants' Motion for Summary Judgment regarding Plaintiff's Jones Act and maritime claims is **GRANTED**.

## II.      Conclusion

As discussed above, Plaintiff is not a Jones Act seaman because URSA is not a vessel. Additionally, Plaintiff's work did not involve traditional maritime activities, so maritime law does not apply.  Plaintiff's Original Complaint does not assert any other claims.  Thus, Defendants' Motion for Summary Judgment is **GRANTED**.  All of Plaintiff's claims against Defendants are **DISMISSED WITH PREJUDICE**.[6]  A Final Judgment will be issued in conformity with this Order and with the post-verdict calendar for final submissions now in effect.

**IT IS SO ORDERED**.

**DONE this the 2nd day of August, 2007, at Galveston, Texas.**

Samuel B. Kent
United States District Judge

---

[6] The Court notes that the jury likewise found that Defendants were not negligent and that URSA was not a vessel.

5